IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-02604-WDM-BNB

LISA LEE,

   Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

   Defendant.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Miller, J.

This matter is before me on the Motion for Summary Judgment (doc no 28) filed by Defendant American Family Mutual Insurance Company ("American Family"). Plaintiff opposes the motion. Upon review of the parties' filings, I conclude oral argument is not required. For the reasons that follow, the motion will be granted in part and denied in part.

Background

Jurisdiction in this matter is based on diversity. 28 U.S.C. § 1332. American Family is an insurance company, which issued a homeowners insurance policy to Plaintiff (the "Policy"). Plaintiff's home was substantially damaged in a fire on or around October 8, 2004. Plaintiff claimed several types of coverage under the Policy: (A) loss of the structure; (B) loss of personal property ("Contents"); (C) personal costs for alternative living arrangements ("Additional Living Expenses"); and (D) supplemental coverage for costs relating to removal of pollutants (asbestos was discovered on the

property which required abatement before the structure could be demolished or rebuilt). Plaintiff concedes that she received payment under the Policy for her personal property and this portion of the coverage is not at issue. In addition, although Plaintiff and American Family initially disagreed about the amount due for the loss of the structure, they used an appraiser procedure specified in the contract. As a result, Plaintiff received a payment for the "actual cash value"[1] of the structure in March 2005 in an amount determined by the appraisers; accordingly, it does not appear that this coverage is at issue either.

    The parties dispute whether Plaintiff received a full payment for Additional Living Expenses. Pursuant to the Policy, American Family would pay "Additional Living Expenses, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living." Exh. 8 to Plaintiff's Response (doc no 30-9) at 3. Additional Living Expenses were limited to "the shortest time required to repair or replace the damaged property or, if you permanently relocate, the shortest time required for your household to settle elsewhere" and, in any case, had to be incurred within 12 months following the date of loss. *Id.* The record indicates that shortly after the fire, Plaintiff moved into a temporary rental through the services of an agency called Temporary Housing. An agreement dated October 21, 2004 provided three months of rental and other necessities of daily living, which was apparently extended. Exh. M to Reply Brief, ¶ 5 Attach. (doc no 39-5). There is no dispute that

---

[1] The Policy had different limits and provisions depending on whether payment for the structure was for "actual cash value" or "replacement value." Plaintiff initially intended to rebuild but ultimately demolished the damaged structure and sold the lot.

American Family paid the invoices of Temporary Housing for Plaintiff's housing costs until May 22, 2005.  In April 2005, Plaintiff's public insurance adjuster, Donald Fymbo, sent American Family a letter informing it that Plaintiff was still living in a replacement home and that American Family should continue to pay these costs.

American Family presents evidence that it sent a check to Mr. Fymbo on December 8, 2004, for $11,886.58, which purported to include $10,000 as an advance on "Contents" (or personal property), $1100 for a "lodging deposit," and $786.58 as reimbursement for receipts on Additional Living Expenses.  However, Plaintiff also received a $10,000 advance on "Contents" around October 11, 2004.  American Family asserts that the December 8, 2004 advance of $10,000 was actually an advance on Additional Living Expenses.  There is no dispute that American Family only deducted one advance of $10,000 from the final Contents payment.  American Family thereafter treated the December 8, 2004 $10,000 advance as an advance on Additional Living Expenses ("ALE Advance").

American Family informed Mr. Fymbo by letter dated April 27, 2005 that future invoices from Temporary Housing would be sent to him until the ALE Advance was exhausted.  See Exh. 4 to Plaintiff's Response (doc no 30-5) ("The check for ALE issued on 12/8/04 for ALE of $10,000.00 hasn't been reconciled yet.  I will ask Temporary Housing Authority to send all future bills to you for payment.  Once the $10,000.00 has been documented as incurred and paid by the insured, send me the bills for lodging and I will pay Lisa and you up to 10/07/05 which would be 1 year from the date of loss.")   The record is unclear about what happened after that, although apparently the invoices were unpaid after May 2005.  Mr. Fymbo at some point received

3

an invoice for approximately $6000 but he averred he was not representing Plaintiff in this regard and contacted the "legal department" about it (it is unclear from the record whose legal department he contacted or what year this occurred). Plaintiff asserts she had to pay her housing costs directly for the remainder of the one-year term (i.e., from May 2005 until October 2005). On March 14, 2007, American Family sent a payment to Temporary Housing purporting to cover expenses from May 2005 to July 2005. It is unclear from the record whether Temporary Housing or the landowners received double payments for this time period or what became of the December 8, 2004 ALE advance as no accounting records from Mr. Fymbo are provided.

Finally, Plaintiff obtained supplemental coverage of up to $10,000 for removal of pollutants. The Policy provided as follows: "We will pay up to $10,000 to cover your expense to extract pollutants, or covered property which becomes a pollutant, from land, water, insured buildings or other structures, or your personal property." Exh. 8 to Plaintiff's Response (doc no 30-9) at 5. American Family took the position that it would pay Plaintiff these costs when the cleanup cost was actually incurred. Plaintiff obtained bids to have the asbestos removed from the property around April to June 2005 but was unable to find a company that would do the work for less than $10,000. The cleanup was completed May 2006 and Mr. Fymbo sent American Family a copy of the paid invoice in June 2006. American Family paid Plaintiff the $10,000 for the asbestos abatement around July 31, 2007.

Plaintiff commenced this lawsuit by filing a *pro se* complaint in state court on October 5, 2005. After she obtained counsel, an amended complaint was filed in November 2006 asserting the following claims: (1) breach of contract; (2) bad faith

4

breach of insurance contract; and (3) unjust enrichment. The case was thereafter removed to this court.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

Defendant moves for summary judgment, arguing that the breach of contract claim fails because it has paid all coverages under the Policy, the bad faith breach of insurance contract claim fails because its interpretation of the pollutant clause (payment only after cost of asbestos removal was incurred) was reasonable, and the unjust enrichment claim fails because equitable remedies are foreclosed by the express contract. I will address each claim in turn.

5

1. <u>Breach of contract</u>

There is no dispute that American Family paid the amounts owed for the structure, personal property, and for the asbestos abatement (although the asbestos payment was made after considerable delay). I conclude that there is also no dispute that American Family paid most of the Additional Living Expenses, although it is unclear whether Plaintiff received the benefit of those payments because of the billing mixups between the numerous parties involved.

The main factual dispute is whether American Family paid Plaintiff a $10,000 advance on Additional Living Expenses. Plaintiff has failed to create a genuine issue of fact in this regard. American Family has provided evidence showing that two checks were sent, one in October 2004 to Plaintiff and one in December 2004 to Mr. Fymbo, each of which purported to contain a $10,000 "advance" on Plaintiff's reimbursement for the loss of the contents of her home (or personal property). However, only one of those $10,000 advances was charged to the Contents award, and the second advance was thereafter applied to the Additional Living Expenses award.

Plaintiff's only evidence to dispute this is an affidavit in which she states "American Family did not advance $10,000 for ALE on 12-8-04, nor on any other date." Affidavit of Lisa Lee, Exh. 6 to Response (doc no 30-7) at ¶ 2. However, in her deposition, Plaintiff testified that she did not know what amounts had been paid as she had left everything to Mr. Fymbo. Exh. C to Motion for Summary Judgment (doc no 29-4) at 60:4-6 ("I mean, because I put all this into Mr. Fymbo's hands. He received everything. Everything went through him. And so I can't say that the figures are correct."). Plaintiff does not appear to have personal knowledge of what amounts were

6

paid and there are no records or testimony from Mr. Fymbo to show what amounts he received and what he disbursed to Plaintiff and others. Accordingly, I conclude that there is no genuine issue as to American Family's payment of $10,000 of Additional Living Expenses to Plaintiff, in addition to the amounts paid directly to Temporary Housing for living expenses from October 2004 to May 2005. The only issue remaining, then, is whether the untimely payment to Temporary Housing for May 2005 to July 2005 constituted performance of American Family's obligations with respect to the remaining Additional Living Expenses. I conclude that there are issues of fact in this regard, particularly with respect to if, when, and to whom demand for performance was made.[2]

Plaintiff also contends that American Family breached by failing to pay the $10,000 for asbestos abatement either in May-June 2005, when Plaintiff received bids, or in June 2006, after the work was actually performed. Plaintiff seeks as damages interest and litigation costs resulting from the delayed payment. Defendant contends that it was not required to pay the pollutant coverage if the cost was not incurred within one year of the loss event.

"An insurance company is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. American Family Mut. Ins. Co.,* 788 P. 2d 748, 750 (Colo. 1990). Words in the policy should be given

---

[2]It appears that the problem was complicated by the fact that Mr. Fymbo did not believe that he was representing Plaintiff with respect to payment of the Additional Living Expenses but did not inform American Family of this. Fymbo Deposition, Exh. B to Motion for S.J. (doc no 29-3) at 84. American Family apparently did not contact Plaintiff directly regarding Additional Living Expenses, understanding that she was represented by Mr. Fymbo, and it is unclear whether Plaintiff ever informed American Family that she was paying her housing costs directly.

their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. *Id.* If a contractual provision is ambiguous, that is, if it is reasonably susceptible to different meanings, it must be construed against the drafter and in favor of providing coverage to the insured. *Id.* Interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation,* 9 P.3d 373, 376 (Colo. 2000). Whether a contract is ambiguous is also a question of law for the court. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo. 1984).

As an initial matter, I conclude that "expense" as used in the pollutant insuring clause is not ambiguous. The Policy provides that American Family "will pay up to $10,000 to cover your expense to extract pollutants . . ." Plaintiff and Mr. Fymba contended that this meant that American Family was required to pay $10,000 up front, regardless of actual cost, if any. "Expense" is defined as "[a]n expenditure of money, time, labor, or resources to accomplish a result; esp., a business expenditure chargeable against revenue for a specific period." Black's Law Dictionary (8th ed. 2004); see also American Heritage Dictionary of the English Language (4th ed. 2000) (defining "expense" as "1a. Something spent to attain a goal or accomplish a purpose . . . b. A loss for the sake of something gained; a sacrifice . . . 2. An expenditure of money; a cost . . . ). As used here and elsewhere in the Policy, the terms "expense" and "cost" invariably refer to an expenditure, or money spent, by the insured; the mere fact that the phrasing in this one clause omits the word "incurred" does not reasonably lead to an interpretation that the pollutant clause, unlike the reimbursement for nearly every other insured loss, requires up front payment. Accordingly, I conclude that American Family's

8

failure to reimburse Plaintiff's asbestos abatement benefit until after the cost was incurred was not a breach of the Policy.

I disagree with American Family, however, that the Policy excluded payment of the pollutant coverage if the cost was incurred more than one year after the loss event. As noted, the Policy provides somewhat different methods of determining payment depending on whether the insured receives the actual cash value of the damaged structure or the replacement value. Under the Policy, an insured could initially receive an actual cash value settlement but then later, if the coverage limit was not yet exceeded, make an additional claim for replacement cost provided that the repair or replacement was completed within one year of the date of loss. See Exh. 8 to Plaintiff's Response (doc no 30-10) at Endorsement 587, page 2 of 2 ("If you receive an actual cash value settlement for damaged or stolen property covered by replacement coverage and you have not reached your limit, you may make a further claim under this condition for replacement cost, provided repair or replacement is completed within one year of the date of loss.") American Family appears to argue that because replacement of the property could not be completed without the asbestos abatement, the pollutant coverage was also subject to this one year limit.

American Family's argument is not supported by the facts or any reasonable interpretation of the Policy. The one-year limit applies to the procedure used when a party receives an initial settlement but then decide instead to repair or replace the damaged dwelling. There is no evidence that Plaintiff ever sought to obtain the higher replacement value payout after she received her actual cash value settlement. Plaintiff's claim for asbestos removal costs arises from a completely different coverage

in the Policy, one that makes no reference to a time limit. The mere fact that the asbestos had to be removed before Plaintiff could replace or demolish the property did not somehow convert her claim under the supplementary pollutant coverage to one for replacement value, subject to the one-year time limit. Accordingly, I conclude that American Family's obligation to pay Plaintiff the pollutant removal benefit arose in June 2006 and was not excused by her failure to incur the cost within a year of the fire.

American Family appears to concede in its reply brief that if the contract did not require asbestos removal costs to be incurred within one year, then its failure to pay Plaintiff for over a year would entitle Plaintiff to interest on the $10,000. Reply Brief at 7.

2. <u>Bad Faith Breach of Insurance</u>

Based on the above, there remain two possible grounds for Plaintiff to demonstrate that American Family breached its contract of insurance with Plaintiff: (1) failure to timely pay a portion of Additional Living Expenses; and (2) delay in paying for the benefit for costs incurred in the asbestos removal. I now examine whether these could support a claim for bad faith breach of insurance. Colorado recognizes that an insurer's failure to deliver first party insurance benefits can give rise to this tort claim. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1273 n. 19 (Colo. 1985). To prevail, an insured must demonstrate that "the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Id.* at 1274.

With respect to the benefits for Additional Living Expenses, Plaintiff's claim fails as a matter of law. American Family agreed to pay this benefit and did so promptly, with the exception of a small portion which was the subject of billing confusion among

10

Plaintiff's representative, Temporary Housing, and American Family. American Family ultimately paid the final amounts it believed were outstanding to the party to whom it believed payment was owed (i.e., Temporary Housing). Since American Family never denied the claim and there is no evidence that it acted unreasonably, I conclude that this failure, even if it amounted to a breach, cannot support a claim for bad faith.

Similarly, as discussed above, I conclude that American Family's interpretation of the pollutant coverage as requiring an expenditure of money toward the asbestos abatement before reimbursement was appropriate. Accordingly, its failure to pay this benefit before Plaintiff incurred the expense was not a breach, much less a bad faith breach, of the Policy. By contrast, I cannot determine on what basis American Family denied payment for more than a year after Plaintiff submitted documentation that she had hired and paid a contractor to clean up the asbestos on the insured property. Without this information, I cannot determine whether this failure, if it was breach, was in bad faith.

      3.      <u>Unjust Enrichment</u>

Plaintiff's unjust enrichment claim asserts no facts that differ from the breach of contract and bad faith breach of insurance contract claims and the relief she seeks is essentially the same. "Unjust enrichment is a theory of recovery that involves an implied contract at law when the parties either have no express contract or have abrogated it." *Bedard v. Martin*, 100 P.3d 584, 591 (Colo. App. 2004) (citations omitted). "In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Id.* at 592. Since the parties

11

do not contest the validity of the Policy, I agree with American Family that the unjust enrichment claim fails as a matter of law.

Accordingly, it is ordered:

1. Defendant's Motion for Summary Judgment (doc no 28) is granted in part and denied in part.

2. Summary judgment shall enter in favor of Defendant on all claims with the following exceptions: Plaintiff's breach of contract claim for the delay in paying (or failure to pay the correct party) the approximately three months of Additional Living Expenses and one year delay in paying the pollutant claim and Plaintiff's bad faith breach of insurance contract claim with respect to the delay in paying the pollutant claim.

DATED at Denver, Colorado, on July 7, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge